**Lee Cirsch (CA State Bar No. 227668)**
THE LANIER LAW FIRM, P.C.
10866 Wilshire Blvd., Suite 400
Los Angeles, California   90024
Telephone:  310-277-5100
Facsimile:   310-277-5103
lee.cirsch@lanierlawfirm.com

W. Mark Lanier *Pending Pro Hac Vice*
wml@lanierlawfirm.com
Eugene R. Egdorf  *Pending Pro Hac Vice*
gene.egdorf@lanierlawfirm.com
Benjamin T. Major  *Pending Pro Hac Vice*
ben.major@lanierlawfirm.com
Ryan D. Ellis  *Pending Pro Hac Vice*
ryan.ellis@lanierlawfirm.com
THE LANIER LAW FIRM, P.C.
6810 FM 1960 West
Houston, Texas 77069
Telephone:   713-659-5200
Facsimile:   713-659-2204

Arthur R. Miller *Pending Pro Hac Vice*
Arthur.miller@lanierlawfirm.com
THE LANIER LAW FIRM, PLLC
126 East 56th Street, 6th Floor
Tower 56
New York, New York 10022
Telephone:  212-421-2800
Facsimile:  212-421-2878

***Attorneys for Class Representative***
***Plaintiffs, William Michael Hicks and***
***Kenneth Harms, et. al.***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| William Michael Hicks and Kenneth Harms, as Class Representative Plaintiffs, *et. al* <br><br> Plaintiffs, <br><br> vs. <br><br> PGA TOUR, Inc., <br><br> Defendant. | Case No. 3:15-cv-00489 <br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

1

## TABLE OF CONTENTS

2

I.  INTRODUCTION AND ISSUE .................................................................................. 1

3

II.  FACTS................................................................................. ..................................2

4

5

A. PLAINTIFFS' RELATIONSHIP WITH DEFENDANT .................................2

6

B. THE ENDORSEMENT POLICY ...........................................................2

7

C. DEFENDANT PGA TOUR FORCES PLAINTIFFS TO
   ENDORSE THE PRODUCTS AND SERVICES OF
   DEFENDANT'S SPONSORS .................................................................4

8

9

D. THE ENDORSEMENT MARKET AT ISSUE ...........................................6

10

III.  ARGUMENTS AND AUTHORITIES ...........................................................7

11

12

A. APPLICABLE STANDARD .................................................................7

13

B. PLAINTIFFS CAN SHOW A LIKELIHOOD OF IRREPREABLE
   HARM ........................................................................................8

14

15

C. THE BALANCE OF HARDSHIPS TIPS SHARPLY IN
   FAVOR OF GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY
   INJUNCTION ...............................................................................11

16

17

D. PLAINTIFFS CAN ESTABLISH THE REQUISTE
   LKELIHOOD OF SUCCESS ON THE MERITS .......................................12

18

19

1. Plaintiffs' Breach of Contract Claim ...............................12

20

2. Plaintiffs' Unjust Enrichment Claim .................................14

21

3. Plaintiffs' Lanham Act Claims ........................................15

22

23

4. Statutory and Common Law Right of Publicity Claims .............17

24

E. PRELIMINARY INJUNCTIVE RELIEF SERVES THE PUBLIC
   INTEREST ...................................................................................18

25

IV.  CONCLUSION AND PRAYER .................................................................19

26

CERTIFICATE OF SERVICE .............................................................................21

27

28

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*
   750 F.2d 1470 (9th Cir. 1985)........................................................................... 8, 11

4

5

*Am. Trucking Assocs., Inc. v. City of Los Angeles*
   559 F.3d 1046 (9th Cir. 2009)......................................................................... 10, 11

6

7

*Architects & Contractors Estimating Servs., Inc. v. Smith*
   164 Cal. App. 3d 1001, 211 Cal. Rptr. 45 (Ct. App. 1985) .................................... 12

8

9

*Arc of California v. Douglas*
   757 F.3d 975 (9th Cir. 2014)............................................................................... 7, 8

10

11

*Cabo Distrib. Co., Inc. v. Brady*
   821 F. Supp. 582 (N.D. Cal. 1992) ......................................................................... 10

12

13

*Cohen v. Facebook, Inc.*
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) ................................................................. 17

14

15

*Downing v. Abercrombie & Fitch*
   265 F.3d 994 (9th Cir. 2001)......................................................................15-16, 17, 18

16

17

*Enyart v. Nat'l Conference of Bar Examiners*
   630 F.3d 1153 (9th Cir. 2001)................................................................................ 18

18

19

*Filipino Yellow Pages v. Asian Journal Publ'ns*
   198 F.3d 1143 (9th Cir. 1999)................................................................................. 8

20

21

*First Commercial Mortgage Co. v. Reece*
   89 Cal. App. 4th 731, 108 Cal. Rptr. 2d 23 (2001) ................................................. 12

22

23

*Garcia v. Lawn*
   805 F.2d 1400 (9th 1986)....................................................................................... 18

24

25

*Gilder v. PGA Tour, Inc.*
   936 F.2d 417 (9th Cir. 1991)........................................................................ 8, 10, 12

26

27

*Hernandez v. Lopez*
   180 Cal. App. 4th 932, 103 Cal. Rptr. 3d 376 (2009) ............................................. 14

28

*Houdini Inc. v. Goody Baskets LLC*
  166 Fed. App'x 946 (9th Cir. 2006) ........................................................................ 8

*Johnson v. Int'l Bus. Machines Corp.*
  891 F. Supp. 522 (N.D. Cal. 1995) ........................................................................ 17

*Marder v. Lopez*
  450 F.3d 445 (9th Cir. 2006) ................................................................................. 17

*Phany Poeng v. United States*
  167 F. Supp. 2d 1136 (S.D. Cal. 2001) ................................................................. 11

*Republic of the Philippines v. Marcos*
  862 F.2d 1355 (9th Cir. 1988) (en banc) ................................................................ 8

*Roe v. Anderson*
  134 F.3d 1400 (9th Cir. 1998) ................................................................................. 8

*Sierra On-Line, Inc. v. Phoenix Software, Inc*.
  739 F.2d 1415 (9th Cir. 1984) ............................................................................ 7-8

*United States v. Adler's Creamery, Inc.*
  107 F.2d 987 (2d Cir. 1939) ................................................................................. 10

**Rules and Statutes**

FED. R. CIV. P. 65 ........................................................................................................ 7

15 U.S.C. § 1 (West 2015) .......................................................................................... 18

15 U.S.C. § 2 (West 2015) .......................................................................................... 18

15 U.S.C. § 26 (West 2015) .......................................................................................... 7

15 U.S.C. § 1116 (West 2015) .............................................................................. 7, 18

15 U.S.C. § 1117 (West 2015) .................................................................................. 16

15 U.S.C. § 1125 (West 2015) ...................................................................... 15, 16, 18

CAL. CIV. CODE § 3344 (West 2015) ................................................................. 17, 18

1

**I.**

**INTRODUCTION AND ISSUE**

2

3       1.  Defendant PGA TOUR, Inc. has repeatedly threatened and attempted to interfere with

4  Plaintiffs' employment relationships with professional golfers for whom they work and with

5  sponsors for whom they provide endorsement services.   Defendant's interference is usually

6  prompted by Plaintiffs' resistance to wearing the "bibs" at issue in this lawsuit without

7  remuneration.   Because a central goal of this lawsuit is to prohibit Defendant from forcing

8  Plaintiffs to wear the bibs without remuneration, Defendant probably will retaliate by interfering

9  with Plaintiffs' business relationships.

10      2.  Given the likelihood that Defendant will retaliate against Plaintiffs for filing this lawsuit

11  and the irreparable harm that retaliation will cause, should this Court issue a preliminary

12  injunction enjoining Defendant from engaging in the following conduct?

13          A.  Communicating with professional golfers for whom Plaintiffs work regarding their

14              employment relationship with the respective Plaintiffs;

15          B.  Engaging in any conduct, beyond what is necessary to maintain the status quo, that

16              limits or interferes with Plaintiffs' ability to caddie for their respective employers

17              during golf tournaments organized, promoted, or sponsored by Defendant, including

18              without limitation each tournament on the PGA TOUR, Web.com Tour, and

19              Champions Tour;

20          C.  Engaging in any conduct, beyond what is necessary to maintain the status quo, that

21              appropriates Plaintiffs' likenesses or images in commercial activities or

22              advertisements;[1]

23

24

_____

25  [1] Plaintiffs recognize that this order effectively permits Defendant to continue forcing Plaintiffs to

26  wear the bibs while this lawsuit is pending.  Plaintiffs do not concede that Defendant can lawfully

27  require Plaintiffs to wear the bibs, and they reserve the right to seek damages and all other

28  remedies related to their wearing of the bibs while this lawsuit is pending.

D. Engaging in any conduct, beyond what is necessary to maintain the status quo, that limits or interferes with Plaintiffs' ability to endorse their own sponsors' goods and services;

E. Communicating with Plaintiffs' sponsors regarding those sponsors' relationships or agreements with Plaintiffs; and

F. Permitting, encouraging, or directing any other person or entity, including local tournament organizers, to engage in any enjoined conduct.

## II.

## FACTS

**A.    PLAINTIFFS' RELATIONSHIP WITH DEFENDANT**

3.    Defendant organizes and promotes three professional golf tours: the PGA TOUR, the Champions Tour and the Web.com Tour ("**Three Tours**"). Ex. 1 at ¶ 6; App'x at 3-4.    Plaintiffs are caddies employed by players competing on one or more of the Three Tours.  Ex. 1 at ¶¶ 4-6; App'x at 3-4.  No agency or employment relationship exists between Plaintiffs and Defendant. *See* Ex. 1 at ¶ 5; App'x at 3.  However, Plaintiffs and Defendant are parties to numerous contracts. *See* Exs. 1 at ¶¶ 7-11, 1-A, 1-B, and 1-C; App'x at 4-5, 10-196.  These contracts are described in detail below.  *Infra* Part III.D.1.

**B.    THE ENDORSEMENT POLICY**

4.    Defendant's Player Handbook & Tournament Regulations ("**Player Handbook**") includes a provision titled, "Player Endorsement Policy" ("**Endorsement Policy"**).  Ex. 1-A at 76-77; App'x at 87-88.  The Endorsement Policy generally requires endorsements to be "tasteful and in accordance with standards of decorum expected of professional golfers." Ex. 1-A at 76; App'x at 87.  The Endorsement Policy's chief concern is preserving the image and reputation of the PGA TOUR and, thus, the Endorsement Policy limits endorsements of tobacco, alcohol, and gaming. *See* Ex. 1-A at 76-77; App'x at 87-88.    In the interest of "taste," the Endorsement Policy limits placement and size of sponsor logos.  Ex. 1-A at 77; App'x at 88.  Otherwise, the Endorsement Policy does not limit endorsements.

5.  Pursuant to Defendant's Endorsement Policy, professional golfers playing in tournaments organized and promoted by Defendant wear various sponsor logos on their attire, including on their shirts. Ex. 1-A at ¶ 8; App'x at 4.  Some sponsors negotiate exclusive endorsement deals with players under which a player will wear only the sponsor's logo.  *Id.*

6.  Under Defendant's rules and contractual provisions drafted by Defendant, caddies are permitted to endorse products under the Endorsement Policy to the same extent as players.  *See* Exs. 1 at ¶¶ 8-11, 1-A at 58 and 76-77, 1-B at 5, 1-C at 3; App'x at 4-5, 69, 87-88, 183, 194. For instance, Defendant's Handbook provides, "Caddies' clothing must conform to the Player Endorsement Policy." Ex. 1-A at 58; App'x at 69.

7.  Plaintiffs have entered numerous contracts with Defendant that include the same or similar language. Exs. 1 at ¶¶ 9-11, 1-A at 58 and 76-77, 1-B at 5, 1-C at 3; App'x at 4-5, 69, 87-88, 183, 194.  For instance, the Registration Form that caddies sign before each tournament states, "Caddies' clothing most conform to the Player Endorsement Policy as stated in the PGA TOUR Player Handbook and Tournament Regulations." Exs. 1 at ¶¶ 9-11, 1-B at 5; App'x at 4-5, 183. The Caddie Application likewise states that Plaintiffs must comply with the Endorsement Policy. Ex. 1-C at 3; App'x at 194.

8.  In practice, Defendant and Plaintiffs have construed these provisions as permitting caddies to wear their own sponsors' logos for pay.  In fact, Defendant relies on these provisions to approve, monitor, and regulate the logos that caddies wear during tournaments. Ex. 1 at ¶¶ 10-12; App'x at 5-6.  Thus, Defendant has historically and expressly permitted caddies to wear their own sponsor's logos on their attire—including shirts.  As set forth in Plaintiffs' Complaint, however, Defendant has unlawfully limited Plaintiffs' endorsement potential and usurped their endorsement opportunities.

C.    **DEFENDANT PGA TOUR EMPLOYS THREATS AND COERCION TO FORCE PLAINTIFFS TO ENDORSE THE PRODUCTS AND SERVICES OF DEFENDANT'S SPONSORS.**

9.   Defendant has forced Plaintiffs to endorse the products and services of Defendant PGA TOUR's sponsors without remuneration.   Ex. 1 at ¶¶ 12-21; App'x at 5-8.   The specific mechanism through which Defendant perpetuates this misconduct is known as the "bib."  Exs. 1 at ¶¶ 12-13, 1-D; App'x at 5-6, 196.

10. As the attached photographs show, the bibs bear sponsor logos. Exs. 1 at ¶ 12, 1-D; App'x at 5-6, 196.   The sponsors represented by those logos pay Defendant for the bib space. Ex. 1 at ¶ 20; App'x at 8.   No one, however, pays Plaintiffs to wear these bibs. Ex. 1 at ¶ 13; App'x at 6. Defendant PGA TOUR has threatened to prohibit Plaintiffs from providing caddie services at tournaments organized and promoted by Defendant PGA TOUR if Plaintiffs refuse to wear the bibs. Ex. 1 at ¶¶ 12, 14, 18; App'x at 5-7.   Additionally, Defendant PGA TOUR has attempted to convince players to terminate their agreements with caddies who refuse to wear the bibs.   Ex. 1 at ¶ 17; App'x at 7.   Defendant PGA TOUR has demonstrated that if Plaintiffs do not supply the marketing medium for Defendant's sponsors by wearing bibs, Defendant will interfere with the relationships between Plaintiffs and the players for whom they work. Ex. 1 at ¶¶ 12-21; App'x at 5-8.

11. Defendant PGA TOUR's coercive conduct has recently reached new heights.    In 2013, many Plaintiffs joined the Association of Professional Tour Caddies ("**APTC**"), a trade association of professional golf caddies who work with some of the top professional golfers in the world.  Ex. 1 at ¶ 18; App'x at 7.  Many Plaintiffs joined the APTC to improve the Plaintiffs' profession in general and to represent Plaintiffs' collective professional interests.  *Id.*

12. In retaliation for many Plaintiffs' membership in the APTC, and in a further effort to compel Plaintiffs to don the bibs during tournaments, Defendant PGA TOUR has threatened to prohibit caddies from receiving endorsement money from any sponsor that competes with Defendant's sponsors or from any of Defendant's sponsors who reduce their investment in Defendant because of an endorsement agreement with one or more of the Plaintiffs.  *See id.*

1    Believing they have no reasonable choice but to comply with Defendant PGA TOUR's demands,

2    Plaintiffs have continued to wear the bibs without compensation.  Ex. 1 at ¶¶ 16, 19; App'x at 6-8.

3        13. The bib is one of the most valuable forms of advertising during a golf tournament.  Ex. 1 at

4    ¶ 20; App'x at 8.  The annual value of the bib likely exceeds $50 million for all Three Tours.  *See*

5    *id*.  However, Plaintiffs are paid nothing to wear bibs and are thereby compelled to endorse the

6    products and services of bib sponsors without remuneration.  *See* Exs. 1 at ¶ 13, 1-D; App'x at 6,

7    196.  Plaintiffs are made to serve as billboards to advertise, at the direction of Defendant, for some

8    of the most profitable companies in the world without compensation.  *See* Exs. 1 at ¶¶ 12-21, 1-D;

9    App'x at 5-8.  Instead of compensating Plaintiffs for wearing the bib, Defendant PGA TOUR

10   "incentivizes" Plaintiffs by refraining from following through on its threats to interfere with

11   Plaintiffs' relationships with their respective players and by refraining from interfering with

12   Plaintiffs' other endorsement opportunities.  *See* Ex. 1 at ¶¶ 12-21; App'x at 5-8.

13       14. Defendant PGA TOUR has always known that Plaintiffs expect payment for wearing

14   sponsor logos.  For instance, Plaintiffs have the option to wear caps bearing the logo of Nature

15   Valley, one of Defendant's corporate sponsors.  Exs. 1 at ¶ 21, 1-B at 9; App'x at 8, 187.

16   Defendant PGA TOUR has fashioned a formula for compensating caddies who choose to wear the

17   Nature Valley caps during tournament play.  Ex. 1-B at 9; App'x at 187.  Defendant has recently

18   threatened to force all caddies to wear the Nature Valley hat pursuant to a purported exclusivity

19   provision in the contract between Nature Valley and Defendant.  Ex. 1 at ¶ 21; App'x at 8.

20   Although Defendant has vehemently proclaimed that Plaintiffs are not a party to that contract

21   when denying Plaintiffs' request to review the contract,  Defendant seems intent on enforcing its

22   provisions against Plaintiffs.  *Id.*

23       15. Plaintiffs' expectation of payment is evident in other ways.  Defendant has drafted

24   agreements and "regulations" and has engaged in conduct which indicates that the Endorsement

25   Policy applies to Plaintiffs, and the Endorsement Policy permits Plaintiffs to endorse products for

26   pay—even though Defendant unlawfully limits that right in practice.  *See* Exs. 1 at ¶¶ 7-12, 1-A at

27   58, 76-77, 1-B at 5, 1-C at 3; App'x at 4-6, 69, 87-88, 186, 194.

28

16. Defendant made a calculated decision to use Plaintiffs, their likenesses, and their images to endorse Defendant's sponsors.  Plaintiffs are recognizable among members of the audience that Defendant PGA TOUR targets with the bibs.  *See* Ex. 1 at ¶ 3; App'x at 3.  By forcing Plaintiffs to wear the bibs, Defendant PGA TOUR benefits from its commercial use of Plaintiffs' likenesses and images and their status as professional caddies.  *See* Exs. 1 at ¶¶ 3 and 20, 1-D; App'x at 3, 8, 196.  Plaintiffs never have consented to the commercial use of their likenesses and images by Defendant PGA TOUR, its affiliates and partners, or its local tournament organizers.  Ex. 1 at ¶¶ 12-15; App'x at 5-6.

**D.      THE ENDORSEMENT MARKET AT ISSUE**[2]

17. Simply stated, the market affected by Defendant's conduct is the national market for the endorsement of products and services by participants in professional golf tournaments ("**Endorsement Market**").  Alternatively, the geographic scope of the Endorsement Market is North America.

18. Defendant PGA TOUR's tournaments take place in various states across the country and are organized in part by a local tournament organizer, which generally is a nonprofit entity. Spectators in attendance view the tournament live, and the tournaments generally are televised, broadcast on the Internet, and viewable on video-on-demand platforms.  *See* Ex. 1 at ¶¶ 12-13, 20; App'x at 5-6, 8.   The consumers in the Endorsement Market are companies who employ professional golf tournament participants to endorse products and services during professional golf tournaments ("**Endorsement Consumers**").  Ex. 1 at ¶ 4; App'x at 3.  By employing tournament participants to endorse products and services at professional golf events, Endorsement Consumers target a specific audience.  *See id.*

---

[2] Because discovery is necessary to fully support Plaintiffs' antitrust claims and state law unfair competition claims, Plaintiffs will not brief the likelihood of success on those claims in this Memorandum.  However, the market definition provides background and support for the claims that support Plaintiffs' request for preliminary relief.

1       19. The supply chain in the Endorsement Market is naturally limited to professional golfers

2   and to Plaintiffs and other caddies participating in professional golf tournaments because they are

3   most visible to live and broadcast audiences. *See* Exs. 1 at ¶¶ 4 and 20, 1-D; App'x at 3, 8.

4   **III.**

5   **ARGUMENTS & AUTHORITIES**

6       20. This Court should grant Plaintiffs' motion for preliminary relief. Plaintiffs' evidence

7   establishes a likelihood of irreparable harm, and the circumstances demonstrate that preliminary

8   relief advances the public interest. Additionally, Plaintiffs' evidence either raises serious

9   questions regarding the merits of Plaintiffs' claims and demonstrates that the balance of hardships

10  tips sharply in Plaintiffs' favor, or alternatively, that Plaintiffs will probably succeed on the merits

11  and that they will likely suffer irreparable injury in the interim if the Court does not grant

12  preliminary relief. Alternatively, Plaintiffs can satisfy one of these standards with the evidence

13  attached to their Motion and the evidence and testimony Plaintiffs anticipate producing at an

14  evidentiary hearing on their Motion for Preliminary Injunction.

15  **A. APPLICABLE STANDARD.**

16      21. Federal Rule of Civil Procedure 65(a) permits a trial court to grant preliminary injunctive

17  relief after notice is provided to the adverse party. The Clayton Act and Lanham Act provide for

18  preliminary injunctive relief under the same principles generally applied by courts of equity. *See*

19  15 U.S.C. § 26; 15 U.S.C. § 1116(a).

20      22. The grant of a preliminary injunction falls within the sound discretion of the district court.

21  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

22  Traditionally, courts consider the following factors when determining the propriety of preliminary

23  injunctive relief: (1) the likelihood that the movant will succeed on the merits, (2) the possibility

24  of irreparable injury to the movant if the preliminary relief is not granted, (3) whether the balance

25  of hardships favors the movant, and (4) advancement of the public interest. *Arc of California v.*

26  *Douglas*, 757 F.3d 975, 983 (9th Cir. 2014).

27      23. The Ninth Circuit applies these factors on a sliding scale that focuses on the degree of

28  potential harm to the parties and the probability that the movant will prevail at trial. *Sierra On-*

*Line*, 739 F.2d at 1421; *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998) (affirming grant of preliminary injunction). Although a movant must support all four factors, a court may grant preliminary relief if the movant shows either (1) probable success on the merits and irreparable injury or (2) serious questions are raised on the merits and the balance of hardships tips sharply in the movant's favor. *Arc of California*, 757 F.3d at 983-84; *Sierra On-Line*, 739 F.2d at 1421 ("If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly.").

24. In preliminary injunction proceedings, declarations and affidavits need not strictly comply with Federal Rule of Civil Procedure 56 or with the Federal Rules of Evidence. *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc) (indicating that a court may give inadmissible evidence some weight and stating, "It was within the discretion of the district court to accept this hearsay for purposes of deciding whether to issue the preliminary injunction"). Thus, declarations in support of a motion for preliminary injunction may rely on information and belief and on hearsay. *See id.*; *Houdini Inc. v. Goody Baskets LLC*, 166 Fed. App'x 946, 947 (9th Cir. 2006) (citing *Filipino Yellow Pages v. Asian Journal Publ'ns*, 198 F.3d 1143, 1147 (9th Cir. 1999) and stating, "the district court did not abuse its discretion in considering hearsay and biased evidence of actual confusion because the rules of evidence do not strictly apply to preliminary injunction proceedings").

**B. Plaintiffs Can Show a Likelihood of Irreparable Harm.**

25. The movant in a preliminary injunction proceeding must demonstrate that a threat of irreparable harm exists. *See Sierra On-Line*, 739 F.2d at 1421. A "reasonable apprehension of threatened injury will suffice." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985); *see Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422-23 (9th Cir. 1991) (finding that professional golfers could suffer irreparable harm in the form of loss of endorsement contracts and being placed in a competitive disadvantage). And as provided below, courts deem a variety of injuries irreparable, including those injuries Plaintiffs will likely suffer here.

26. Defendant probably will retaliate against Plaintiffs for filing this lawsuit. *See* Ex. 1 at ¶¶ 12-21; App'x at 5-8. Specifically, Plaintiffs reasonably anticipate that Defendant will attempt to

1  convince players to terminate caddies who have participated in this lawsuit; will unreasonably

2  disqualify Plaintiffs from providing caddie services to their respective players; and will interfere

3  with Plaintiffs' existing and prospective endorsement agreements by unreasonably limiting

4  Plaintiffs' right to wear non-bib logos on their attire and by forcing all Plaintiffs to wear Nature

5  Valley caps. Ex. 1 at ¶¶ 12-14, 16-18, and 21; App'x at 5-8.

6      27. The threat of retaliation is real. In 2014, a group of caddies merely objected to continuing

7  to wear the bibs without compensation. Ex. 1 at ¶ 17; App'x at 7. The caddies voiced this

8  objection multiple times to high-ranking officials for Defendant, including Andy Pazder

9  (Defendant's Executive Vice President and Chief of Operations), Leonard Brown, Jr. (Defendant's

10  Chief Legal Officer), Tyler Dennis (Defendant's Vice President of Competition), and Andy

11  Levinson (Defendant's Vice President of Tournament Administration and Anti-Doping). *Id.* In

12  response to Plaintiffs' objections, Defendant attempted to convince players to terminate caddies

13  who refuse to where the bibs and gauged players' willingness to terminate caddies who refuse to

14  wear the bibs. *Id.* At least one player alerted the caddies to Defendant's attempts to retaliate

15  against caddies who do not wear bibs. *Id.*

16      28. In 2013 many caddies formed the Association of Professional Tour Caddies ("**APTC**").

17  Ex. 1 at ¶ 18; App'x at 7. Shortly after the APTC's formation, Defendant threatened to prohibit

18  Plaintiffs from receiving endorsement money from any sponsor that competes with Defendant's

19  sponsors or from any of Defendant's sponsors who reduce their investment in Defendant's

20  advertising because of an endorsement agreement with one or more of the Plaintiffs. *Id.*

21      29. Defendant has also used the Nature Valley caps as leverage in its threats of retaliation. Ex.

22  1 at ¶ 21; App'x at 8. Nature Valley is one of Defendant's corporate sponsors and has an

23  agreement with Defendant under which Plaintiffs may wear caps during golf tournaments bearing

24  the Nature Valley logo. *Id.* In practice and according to the Caddie Handbook, participation in

25  the Nature Valley cap program is optional. Exs. 1 at ¶ 21, 1-B at 9; App'x at 8, 187. The Caddie

26  Handbook even states that the program is optional. *Id.* Thus, Plaintiffs may opt into the program

27  and receive limited compensation for wearing Nature Valley caps. *Id.* However, upon hearing

28  Plaintiffs' objection to the bibs, Defendant threatened to force all Plaintiffs to wear the Nature

1 Valley caps even though many Plaintiffs currently endorse other products on their headwear.  Ex.

2 1 at ¶ 21; App'x at 8.

3     30. Based on Defendant's history of retaliating against Plaintiffs when they object to wearing

4 the bibs without compensation, Defendant probably will take retaliatory measures during this

5 lawsuit that will injure Plaintiffs.  As set forth below, the anticipated harm would be irreparable.

6     31. Harm is irreparable when it would impair the court's ability to grant an effective remedy

7 upon trial on the merits.  *See United States v. Adler's Creamery, Inc*., 107 F.2d 987, 990 (2d Cir.

8 1939).   Thus, the ordinary function of preliminary injunctive relief is to maintain the status quo

9 while a lawsuit is pending.   *Id.*   A primary purpose of this lawsuit is to permanently enjoin

10 Defendant from interfering with Plaintiffs' contracts with their respective players and with

11 sponsors.  Complaint at ¶¶ 142-154.   Plaintiffs also seek to prohibit Defendant from unlawfully

12 limiting Plaintiffs' endorsement activities and from using Plaintiffs' likenesses and images in

13 Defendant's commercial activities without Plaintiffs' consent.  *Id.*  If Defendant is permitted to

14 arbitrarily prohibit Plaintiffs from participating in tournaments while this lawsuit is pending,

15 Plaintiffs' ability to work as professional caddies will be permanently injured.  Ex. 1 at ¶¶ 2, 4-6,

16 16; App'x at 3-4, 6-7.  Thus, by eliminating Plaintiffs' employment during these proceedings and

17 effectively foreclosing Plaintiffs from obtaining future employment by professional golfers,

18 Defendant will essentially destroy the  employment relationships and endorsement opportunities

19 which Plaintiffs are asking this Court to protect in this litigation.

20     32. Further, injury to reputation or goodwill is irreparable.  *See Gilder*, 936 F.2d at 422-23

21 (harm to golf club manufacturer's reputation is irreparable); *Cabo Distrib. Co., Inc. v. Brady*, 821

22 F. Supp. 582, 600 (N.D. Cal. 1992) (loss of goodwill developed under brand name of vodka

23 supported preliminary relief); *Am. Trucking Assocs., Inc. v. City of Los Angeles*, 559 F.3d 1046,

24 1057-59 (9th Cir. 2009) (holding that an inability to conduct business causes goodwill to

25 evaporate and supports a finding of likely irreparable harm).   If Defendant carries out its

26 anticipated actions, Plaintiffs will be unable to caddie at professional golf tournaments and unable

27 to fulfill their endorsement commitments to sponsors.  Ex. 1 at ¶ 16; App'x at 6-7.  As a result,

28

1   Plaintiffs' goodwill is likely to evaporate, and preliminary relief is necessary to prevent Plaintiffs'

2   loss of goodwill.   *See* Ex. 1 at ¶¶ 2, 4-6, 16; App'x at 3-4, 6-7.

3       33. Finally, when the movant's potential economic loss is so great that the existence of

4   movant's business is threatened, the threatened harm is irreparable.  *Am. Trucking*, 559 F.3d at

5   1058 (being "out of work" is irreparable); *Am. Passage*, 750 F.2d at 1474 ("The threat of being

6   driven out of business is sufficient to establish irreparable harm."); *Phany Poeng v. United States*,

7   167 F. Supp. 2d 1136, 1143 (S.D. Cal. 2001) ("The majority of district courts addressing [whether

8   being forced out of business constitutes irreparable harm] have concluded that a loss of at least

9   thirty percent of a plaintiff's business can constitute irreparable harm.").   Plaintiffs' business

10  consists of caddying for professional golfers and endorsing sponsors' goods and services during

11  golf tournaments.   Ex. 1 at ¶¶ 4, 6, and 16; App'x at 3-4, 6-7.   Because professional golfers

12  employ part-time caddies only in exceptional circumstances, Plaintiffs will be unable to continue

13  their business if Defendant retaliates as anticipated.  Ex. 1 at ¶ 16; App'x at 6-7.  Thus, Plaintiffs

14  will be effectively forced out of business.

15      34. Simply stated, Defendant's anticipated retaliation will force Plaintiffs out of business,

16  destroy Plaintiffs' reputation and goodwill, and impair the court's ability to grant an effective

17  remedy upon trial on the merits.   Preliminary relief is necessary to protect Plaintiffs from these

18  irreparable harms.

19  **C.  THE BALANCE OF HARDSHIPS TIPS SHARPLY IN FAVOR OF GRANTING PLAINTIFFS' MOTION**

20  **FOR PRELIMINARY INJUNCTION.**

21      35. To determine which way the balance of the hardships tips, a court must identify the

22  possible harm caused by issuing the preliminary injunction against the possibility of the harm

23  caused by not issuing it.  *See Am. Trucking*, 559 F.3d at 1059-60.   Applying that analysis here

24  reveals that the balance of hardships tips sharply in Plaintiffs' favor.

25      36. As set forth below, *infra* ¶ 63, the Plaintiffs requested preliminary relief is prohibitive in

26  nature and merely maintains the status quo.  Even if this Court grants a preliminary injunction,

27  Plaintiffs will continue to wear the bibs against their will, and Defendant will continue to receive

28  compensation from bib sponsors while this lawsuit is pending.  Plaintiffs will continue to follow

1   Defendant's rules just as they have in the past. Some Plaintiffs may continue to opt into the

2   Nature Valley cap program, thus generating endorsement income for Defendant. Thus, no harm

3   will befall Defendant as a result of the preliminary relief sought by Plaintiffs.

4   37. On the other hand, without a preliminary injunction, Plaintiffs face immense hardships. As

5   set forth in the previous section, Plaintiffs' livelihoods and goodwill will likely be decimated in

6   the absence of injunctive relief. Without a preliminary injunction, Plaintiffs face a real risk of

7   losing their profession, not just their jobs. Thus, the balance of hardships tips sharply in favor of

8   granting a preliminary injunction.

9   **D. PLAINTIFFS CAN ESTABLISH THE REQUISITE LIKELIHOOD OF SUCCESS ON THE MERITS**

10  38. Because the balance of hardships tip sharply in their favor, Plaintiffs need only establish a

11  "fair chance of success on the merits," a standard satisfied by the evidence presently before the

12  Court. *See Gilder*, 936 F.2d at 422 (holding trial court acted within its discretion in granting

13  preliminary injunction because the balance of hardships tipped sharply in favor of the movants,

14  and the movants raised serious questions regarding the likelihood of their success on the merits).

15  Alternatively, Plaintiffs can establish a probability of success on the merits combined with the

16  threat of irreparable harm.

17  **1. Plaintiffs' Breach of Contract Claim**

18  39. The essential elements of a breach of contract claim are existence of the contract,

19  performance by the plaintiff or excuse for nonperformance, breach by the defendant, and damages.

20  *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745, 108 Cal. Rptr. 2d 23, 33

21  (2001). An agreement is an enforceable contract if the parties are capable of contracting, they give

22  consent, the agreement concerns a lawful object or purpose, and sufficient consideration supports

23  the agreement. *Architects & Contractors Estimating Servs., Inc. v. Smith*, 164 Cal. App. 3d 1001,

24  1007, 211 Cal. Rptr. 45, 48 (Ct. App. 1985).

25  40. Defendant PGA TOUR is a lawfully-formed corporation with the capacity to enter

26  enforceable agreements, including those at issue here. Among the essential terms of the contracts

27  at issue is Defendant PGA TOUR's agreement to permit Plaintiffs to exercise the same rights as

28  players under the Endorsement Policy. Exs. 1 at ¶¶ 7-12, 1-A at 58 and 76-77, 1-B at 5, 1-C at 3;

1 App'x at 4-6, 69, 87-88, 183, 194.     In exchange for this right and others, Plaintiffs agreed to,

2 among other things, carry out their duties as caddies in accordance with Defendant PGA TOUR's

3 guidelines.  *See id.*  For instance, Plaintiffs agreed to wear the types of shoes designated by

4 Defendant, to refrain from entering the locker rooms at any time, to assist in maintaining the golf

5 course by replacing divots, and to release Defendant PGA TOUR from liability for certain

6 physical injuries that Plaintiffs might sustain during the course of a tournament.  *See id.*; Ex. 1-C

7 at 1; App'x at 4-6, 69, 87-88, 183, 192, 194.

8     41. Plaintiffs and Defendant PGA TOUR mutually assented to all material terms in the subject

9 contracts.  Exs. 1 at ¶¶ 7-11, 1-A at 58, 76-77, 1-B at 5, 1-C; App'x at 4-6, 69, 87-88, 183, 194.

10 Their respective assent to the essential terms of the contracts is evidenced by their signatures and

11 marks on written contracts.  *See id.*  Mutual assent is also evidenced by the parties' conduct.  *See*

12 *id.*  Specifically, Plaintiffs performed their caddie services in compliance with the terms of those

13 contracts, and Defendant permitted Plaintiffs to caddie on the Three Tours without objection and

14 issued Plaintiffs credentials for those tournaments. Ex. 1 at ¶¶ 10-11; App'x at 5.  Defendant has

15 also approved, monitored, and regulated logos worn by caddies, citing the Endorsement Policy as

16 its justification for doing so, further demonstrating Defendant's assent to the terms.  Ex. 1 at ¶¶

17 10-12; App'x at 5-6.

18     42. Plaintiffs performed under the contracts by complying with their various duties under the

19 terms, including those duties set forth above.  Ex. 1 at ¶ 10; App'x at 5.  Defendant PGA TOUR

20 breached the contract by prohibiting Plaintiffs from exercising their rights under the Endorsement

21 Policy.  Ex. 1 at ¶¶ 12-15, 17-18, 21; App'x at 5-8.    As set forth above, Defendant coerced

22 Plaintiffs into wearing bibs that cover a significant part of the Plaintiffs' attire.  *See id.*; Ex. 1-D;

23 App'x at 5-8, 196.  Plaintiffs received no payment for wearing the bibs, which bore the logos of

24 sponsors who paid Defendant PGA TOUR for endorsing their goods and services.  Exs. 1 at ¶¶ 13

25 and 20, 1-D; App'x at 6, 8, 196.  Additionally, because of the coverage of the bibs, Plaintiffs were

26 unable to place logos at prime locations on their attire and, thus, could not endorse sponsors as

27 provided by the Endorsement Policy.  Exs. 1 at ¶ 14, 1-D; App'x at 6, 196.

28

43. Finally, as a result of Defendant PGA TOUR's breaches, Plaintiffs have sustained damages in the amount that they would have earned had they been permitted to endorse products in accordance with the Endorsement Policy. *See* Ex. 1 at ¶¶ 14, 21; App'x 6, 8. Also, Defendant has been unjustly enriched as a result of its breaches of the relevant contracts. *See* Ex. 1 at ¶ 20; App'x at 8.

44. Plaintiffs have demonstrated the requisite likelihood that they will succeed on their breach of contract claim. Therefore, this factor supports the grant of preliminary relief.

### 2. Plaintiffs' Unjust Enrichment Claim

45. To the extent this Court finds that Plaintiffs do not have enforceable contracts on which to base their contract claims, it should grant the equitable remedy of unjust enrichment because Plaintiffs have conferred a benefit on Defendant which Defendant knowingly accepted under circumstances that make it inequitable for Defendant to retain that benefit without paying Plaintiffs fair value. *See Hernandez v. Lopez*, 180 Cal. App. 4th 932, 939, 103 Cal. Rptr. 3d 376, 380 (2009) (describing "textbook example for application" of unjust enrichment doctrine).

46. Under the Endorsement Policy and other documents incorporating the Endorsement Policy, Plaintiffs are entitled to payment for endorsing products and services by wearing sponsors' logos on their attire. Exs. 1 at ¶¶ 7-11, 1-A at 58 and 76-77, 1-B at 5, 1-C at 3; App'x at 4-6, 69, 87-88, 183, 194. Plaintiffs have endorsed Defendant's sponsors unwillingly by wearing the bibs. Ex. 1 at ¶¶ 12-19, 21; App'x at 5-8. Defendant has accepted the benefits conferred on it by virtue of Plaintiffs wearing the bibs. *See id.*; Ex. 1 at ¶ 20; App'x at 5-8. However, Plaintiffs never have been paid for endorsement services they provided by donning the bibs. Ex. 1 at ¶ 13; App'x at 6.

47. Further, Defendant knew that Plaintiffs expected compensation for donning corporate logos during professional golf tournaments. Defendant's Endorsement Policy and documents incorporating the Endorsement Policy permit Plaintiffs to endorse products and services for pay by displaying sponsor logos on their attire. Exs. 1 at ¶¶ 7-11, 1-A at 58 and 76-77, 1-B at 5, 1-C at 3; App'x at 4-6, 69, 87-88, 183, 194. Defendant pays Plaintiffs to wear caps bearing the logo of Defendant's hat sponsor during professional golf tournaments. Exs. 1 at ¶ 21, 1-B at 9; App'x at 8, 187. Plaintiffs have informed Defendant that Plaintiffs oppose wearing the bibs without

1   compensation, and Plaintiffs have informed Defendant that they want the opportunity to endorse
2   their own sponsors in the space occupied by the bibs. Ex. 1 at ¶¶ 17-18; App'x at 7. Further,
3   Defendant PGA TOUR had to coerce Plaintiffs into wearing the bibs. Ex. 1 at ¶¶ 12-19; App'x at
4   5-8. Defendant PGA TOUR knew that the basis of Plaintiffs' resistance to wearing the bibs was
5   Plaintiffs' desire to be paid for endorsing products and services. *See id.* Defendant PGA TOUR
6   voluntarily and knowingly accepted and retained payment for the endorsements effectuated by the
7   bibs despite knowing that Plaintiffs expected payment for endorsing bib sponsors' products and
8   services. *See id.*; Ex. 1 at ¶ 20; App'x at 8.

9   48. For these reasons, it would be inequitable for Defendant PGA TOUR to retain the benefits
10  provided by Plaintiffs' endorsement of Defendant's sponsors without paying fair value for those
11  endorsement services. Plaintiffs are entitled to an award equal to the value of the benefits they
12  conferred on Defendant.

13  49. Plaintiffs have demonstrated the requisite likelihood that they will succeed on their unjust
14  enrichment claim. Therefore, this factor supports the grant of preliminary relief.

15                          **3. Plaintiffs' Lanham Act Claims**

16  50. The Lanham Act provides the following:

17      Any person who, or in connection with any goods or services, uses any . . . false or
18      misleading representation of fact, which . . . is likely to cause confusion, or to cause
19      mistake, or deceive as to the affiliation, connection or association of such person
20      with another person, or as to the origin, sponsorship, or approval of his or her
21      goods, services, or commercial activities by another person . . .  shall be liable in a
22      civil action by any person who believes that he or she is or is likely to be damaged
23      by such act.

24  *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001) (quoting 15 U.S.C. §
25  1125(a) (original ellipses)). Courts have applied this provision of the Lanham Act to protect
26  individuals such as the Plaintiffs from misappropriation of their images and likenesses in
27  commercial activities. *See id.* at 1009 (reversing summary judgment dismissal of surfers' Lanham
28  Act claims because surfers established that defendant had used images of the surfers from a 1965

1    surfing competition in defendant's quarterly catalog).  The Lanham Act also prohibits commercial

2    advertising or promotion that "misrepresents the nature, characteristics, qualities, or geographic

3    origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. §

4    1125(a).

5        51. As detailed above, Plaintiffs were forced to wear the bibs before live and broadcast

6    audiences of professional golf tournaments.  Exs. 1 at ¶¶ 12-19, 1-D; App'x at 5-8, 196.

7    Defendant knew that these audiences are generally comprised of golf fans who readily identify

8    professional golfers and their caddies.  *See* Ex. 1 at ¶¶ 3, 20; App'x at 3, 8.  Motivated by that

9    knowledge, Defendant used the likenesses and images of Plaintiffs to endorse the products and

10   services of bib sponsors by forcing Plaintiffs to wear bibs at professional golf tournaments.  *See*

11   *id.*; Exs. 1 at ¶¶ 12-20, 1-D; App'x at 5-8.

12       52. By forcing Plaintiffs to wear the bibs before live and broadcast audiences, Defendant

13   intentionally and knowingly (1) misled those audiences into believing that Plaintiffs voluntarily

14   endorse or approve of the bib sponsors' products and services; (2) caused confusion among

15   members of those audiences as to whether Plaintiffs endorse or approve bib sponsors' products

16   and services; (3) misled or confused Endorsement Consumers regarding Plaintiffs' association

17   with Defendant and involvement in Defendant's advertising activities; (4) misled those audiences

18   and Endorsement Consumers into believing that Plaintiffs voluntarily endorse or approve

19   Defendant PGA TOUR's use of Plaintiffs' likenesses and images in Defendant's marketing

20   activities; and (5) created a false belief that Defendant PGA TOUR and Plaintiffs are connected,

21   associated, or otherwise affiliated with respect to the advertising achieved by the bibs and with

22   respect to the companies advertised on the bibs.  *See* 15 U.S.C. § 1125(a).

23       53. As a result of Defendant PGA TOUR's violations of the Lanham Act, Plaintiffs have

24   sustained damages in the amount that they would have earned had Defendant or the bib sponsors

25   been required to pay Plaintiffs for the use of their likenesses and images.  *See* 15 U.S.C. § 1117(a);

26   Ex. 1 at ¶¶ 17, 20; App'x at 7-8.  By virtue of its Lanham Act violations, Defendant has been

27   enriched by all sums paid for bib advertising.  Plaintiffs seek an order disgorging those sums and

28   awarding them to Plaintiffs.  *See* 15 U.S.C. § 1117(a).

54. Plaintiffs have demonstrated the requisite likelihood that they will succeed on their Lanham Act claim. Therefore, this factor supports the grant of preliminary relief.

**4. Statutory and Common Law Right of Publicity Claims**

55. A defendant is liable under California's right of publicity statute for knowingly using the image or likeness of others for marketing purposes without their consent. CAL. CIV. CODE § 3344. The common law claim for misappropriation of the right of publicity is similar, except there is no requirement that the misappropriation have been done knowingly. *Downing*, 265 F.3d at 1001. The scope of "consent" is narrowly drawn. *See Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1095 (N.D. Cal. 2011) (consent to "use" of Facebook photos does not necessarily include "commercial use"). Further, "consent" obtained through wrongful means is invalid. *Marder v. Lopez*, 450 F.3d 445, 450 (9th Cir. 2006) (applying California law). An act need not be a crime or tort to be considered "wrongful." *Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 529 (N.D. Cal. 1995) (applying California law).

56. Defendant appropriated Plaintiffs' likenesses and images at professional golf tournaments and in broadcasts of those tournaments to endorse the products and services of Defendant's bib sponsors. Exs. 1 at ¶¶ 12-20, 1-D; App'x at 5-8, 196. Defendant also used Plaintiffs' likenesses and images to market bib space to potential Endorsement Consumers. *See id.* In return, Defendant's sponsors paid Defendant various sums of money. Ex. 1 at ¶¶ 12, 20; App'x at 5-6, 8.

57. Plaintiffs never consented to Defendant's use of their likenesses and images for commercial purposes. Ex. 1 at ¶¶ 12-15; App'x at 5-6. Rather, Defendant PGA TOUR forced Plaintiffs to wear the bibs by threatening to interfere with Plaintiffs' relationships with their respective players and individual sponsors. Ex. 1 at ¶¶ 12, 14, 17-19, 21; App'x at 5-8. Defendant threatened to impose further limits on Plaintiffs' right to endorse their individual sponsors if Plaintiffs refused to wear the bibs. *See id.* Reasonably prudent people in Plaintiffs' position would have succumbed to Defendant PGA TOUR's threats just as Plaintiffs did. Given the vulnerable position that Plaintiffs were in and Defendant's knowledge of Plaintiffs' vulnerability, Defendant successfully coerced Plaintiffs into wearing the bibs. *See id.*; Ex. 1 at ¶¶ 6, 16; App'x at 3-4, 6-7.

58. Had Plaintiffs been paid for the use of their likenesses and images, Plaintiffs could have collectively earned tens of millions of dollars during the 2013-2014 golf season and similar sums during other seasons at issue in this lawsuit. *See* Ex. 1 at ¶ 20; App'x at 8. Plaintiffs are entitled to recover these sums. *See* CAL. CIV. CODE § 3344(a).

59. Plaintiffs have demonstrated the requisite likelihood that they will succeed on their right of publicity claim. Therefore, this factor supports the grant of preliminary relief.

**E. Preliminary Injunctive Relief Serves the Public Interest**

60. The public interest factor is satisfied if the public interest is declared by statute that provides the basis of the lawsuit. *See Enyart v. Nat'l Conference of Bar Examiners*, 630 F.3d 1153, 1167 (9th Cir. 2001). Here, Defendant's use of Plaintiffs' images and likenesses in commercial activities without Plaintiffs' consent is prohibited by a California statute. CAL. CIV. CODE § 3344(a). The Lanham Act prohibits Defendant's use of Plaintiffs' images and likenesses in a manner that is likely to cause confusion or mistake with respect to sponsorship or approval of Defendant's commercial activities. *Downing*, 265 F.3d at 1007 (citing 15 U.S.C. § 1125(a)). The Lanham Act also prohibits Defendant's use of Plaintiffs' images and likenesses in commercial advertising or promotion that misrepresents the nature or characteristics of Defendant's or others' goods, services, or commercial activities. *See* 15 U.S.C. § 1125. The Lanham Act provides for injunctive relief to enjoin violations of the act. 15 U.S.C. § 1116(a). The Sherman Act prohibits unreasonable restraints on trade and attempts to form an unlawful monopoly. 15 U.S.C. §§ 1-2. Defendant's violations of these statutes provide a significant basis for liability in this lawsuit. Although the preliminary relief sought does not cure all violations of these statutes at issue in this case, it prohibits Defendant from taking additional action that will violate these statutes and, thus, supports the public interest reflected in these statutes. The public interest is served by such relief.

61. Further, when a defendant retaliates against a plaintiff for asserting his rights, the public interest is irreparably harmed because the fear of such retaliation will deter others from asserting their rights. *See Garcia v. Lawn*, 805 F.2d 1400, 1405-06 (9th 1986) (considering retaliation in the context of irreparable harm but noting such retaliation causes "harm to the public interest"). The public's interest is best served by prohibiting powerful litigants such as Defendant from

1  retaliating against their adversaries in a way that secures a judicial victory by forcing their

2  adversaries out of business. Because Defendant's likely retaliation would do just that, preliminary

3  injunctive relief is proper.

4                                              **IV.**

5                              **CONCLUSION AND PRAYER**

6       62. Plaintiffs have satisfied the requisite standards to support the preliminary injunctive relief

7  Plaintiffs have requested. Alternatively, Plaintiffs have offered sufficient evidence to warrant a

8  full evidentiary hearing on their Motion for Preliminary Injunction so that they may be afforded

9  the opportunity to provide the Court with additional evidence and testimony.

10      63. Therefore, Plaintiffs respectfully ask that the Court grant their Motion for Temporary

11  Injunction and enjoin Defendant from (A) communicating with professional golfers for whom

12  Plaintiffs work regarding their employment relationship with the respective Plaintiffs; (B)

13  engaging in any conduct, beyond what is necessary to maintain the status quo, that limits or

14  interferes with Plaintiffs' ability to caddie for their respective employers during golf tournaments

15  organized, promoted, or sponsored by Defendant, including without limitation each tournament on

16  the PGA TOUR, Web.com Tour, and Champions Tour; (C) engaging in any conduct, beyond what

17  is necessary to maintain the status quo, that appropriates Plaintiffs' likenesses or images in

18  commercial activities or advertisements; (D) engaging in any conduct, beyond what is necessary to

19  maintain the status quo, that limits or interferes with Plaintiffs' ability to endorse their sponsors'

20  goods and services; (E) communicating with Plaintiffs' sponsors regarding those sponsors'

21  relationships or agreements with Plaintiffs; and (F) permitting, encouraging, or directing any other

22  person or entity, including local tournament organizers, to engage in any enjoined conduct.

23      64. Alternatively, Plaintiffs respectfully ask that the Court set Plaintiffs' Motion for

24  Preliminary Injunction for a full evidentiary hearing as soon as practicable following Defendant's

25  notice of Plaintiffs' claims and request for preliminary relief, and completion of preliminary

26  discovery.

27

28

1   Dated: February 3, 2015          **THE LANIER LAW FIRM, P.C.**

2                                    By:      */s/ Lee Cirsch*_____
                                                 Lee Cirsch
3
                                     Lee Cirsch (CA State Bar No. 227668)
4                                    10866 Wilshire Blvd., Suite 400
                                     Los Angeles, CA  90024
5                                    Telephone:  310-277-5100
                                     Facsimile:   310-277-5103
6                                    lee.cirsch@lanierlawfirm.com

7                                    THE LANIER LAW FIRM, P.C.
                                     W. Mark Lanier *Pending Pro Hac Vice*
8                                    wml@lanierlawfirm.com
                                     Eugene R. Egdorf  *Pending Pro Hac Vice*
9                                    gene.egdorf@lanierlawfirm.com
                                     Benjamin T. Major  *Pending Pro Hac Vice*
10                                   ben.major@lanierlawfirm.com
                                     Ryan D. Ellis  *Pending Pro Hac Vice*
11                                   ryan.ellis@lanierlawfirm.com
                                     6810 FM 1960 West
12                                   Houston, TX 77069
                                     Telephone:   713-659-5200
13                                   Facsimile:    713-659-2204

14                                   Arthur R. Miller *Pending Pro Hac Vice*
                                     Arthur.miller@lanierlawfirm.com
15                                   THE LANIER LAW FIRM, PLLC
                                     126 East 56th Street, 6th Floor
16                                   Tower 56
                                     New York, New York 10022
17                                   Telephone:  212-421-2800
                                     Facsimile:  212-421-2878
18                                   ***Attorneys for Class Representative Plaintiffs, William
                                     Michael Hicks and Kenneth Harms, et. al.***
19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I, Lee Cirsch, declare:

3

I certify that the foregoing document has been served on Defendant, PGA TOUR, Inc., via

4

5

U.S. Postal Service certified mail, return receipt requested, to Defendant's designated agents in

6

California, CSC–Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Ste. 150N, Sacramento,

7

CA 95833.  I further certify that the foregoing document has been served on Defendant, PGA

8

TOUR, Inc., via U.S. Postal Service certified mail, return receipt requested, to Defendant's

9

designated agent in Florida, Richard Anderson, 112 PGA TOUR Blvd., Ponte Vedra Beach, FL

10

32082.

11

The foregoing document has been filed contemporaneously with Plaintiffs' Original

12

Complaint.  Thus, Plaintiffs will manually serve Defendant with the foregoing document with

13

Plaintiffs' Original Complaint and other case-initiating documents in accordance with the rules for

14

15

serving such documents.

16

I declare under penalty of perjury that the foregoing is true and correct.

17

Signed on February 3rd, 2015.

18

THE LANIER LAW FIRM, P.C.

19

By:    _____*/s/ Lee  Cirsch*_____

20

Lee Cirsch

21

THE LANIER LAW FIRM, P.C.

22

Lee Cirsch (CA227668)
10866 Wilshire Blvd., Suite 400

23

Los Angeles, CA  90024

24

Telephone:  310-277-5100
Facsimile:   310-277-5103

25

lee.cirsch@lanierlawfirm.com

26

27

28