```
 1 | RAOUL D. KENNEDY (Bar No. 40892)
   | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 2 | 525 University Avenue, Suite 1400
   | Palo Alto, California 94301
 3 | Telephone: (650) 470-4500
   | Facsimile:  (650) 470-4570
 4 | Email:      raoul.kennedy@skadden.com
   |
 5 | JEFFREY A. MISHKIN (admitted pro hac vice)
   | ANTHONY J. DREYER (admitted pro hac vice)
 6 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   | Four Times Square
 7 | New York, NY 10036
   | Telephone: (212) 735-3000
 8 | Facsimile:  (212) 735-2000
   | Email:      jeffrey.mishkin@skadden.com
 9 | Email:      anthony.dreyer@skadden.com
10 |
   | Attorneys for Defendant
11 | PGA TOUR, Inc.
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM MICHAEL HICKS and KENNETH HARMS, as Class Representative Plaintiffs, *et al.*<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>PGA TOUR, INC.<br><br>　　　　　　　Defendant. | CASE NO. 3:15-cv-00489-VC<br><br>**DECLARATION OF ANDREW B. LEVINSON IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE TO THE MIDDLE DISTRICT OF FLORIDA**<br><br>Hearing Date: April 30, 2015<br>Time:　10:00 a.m.<br>Place:　Courtroom 4<br>Judge:　Hon. Vince Chhabria |

# DECLARATION OF ANDREW LEVINSON

I, ANDREW B. LEVINSON, declare as follows:

1. I am over the age of 21 and am competent to make this Declaration. I have information relevant to this action and personal knowledge of each statement made in this Declaration.

2. I submit this Declaration in support of Defendant PGA TOUR, Inc.'s (the "TOUR") Motion to Transfer Venue to the Middle District of Florida.

3. I am the Vice President of Tournament Administration and Anti-Doping at the TOUR. I joined the TOUR in 2004 as the Manager of Brand Marketing. In 2005 I became the Manager of Business Development for the TOUR. From 2006-2009 I served as Director of Corporate Marketing for the TOUR. In 2009 I became Executive Director of Anti-Doping, and in 2014 became Vice President of Tournament Administration and Anti-Doping.

4. In my capacity as Vice President of Tournament Administration and Anti-Doping, I am responsible for, among other things, matters relating to caddies on the PGA TOUR, Champions Tour, and/or Web.com Tour. This includes administering the rules and regulations applicable to players and their caddies, and overseeing the benefits and amenities the TOUR provides those caddies. I have personal knowledge regarding the TOUR's practice of requiring caddies to wear uniforms, which uniforms include bibs that display the name of the player for whom they are caddying and the name and/or logo of the golf tournament at which they are caddying. In addition, I am familiar with the TOUR's agreements with local host organizations of TOUR golf tournaments concerning caddie bibs and caddie amenities provided at those tournaments, and the TOUR's agreements with title sponsors of TOUR golf tournaments concerning on-site branding, which includes caddie bibs.

5. I work at the TOUR headquarters in Ponte Vedra Beach, Florida. I reside in Ponte Vedra Beach, Florida.

## The Issues in Dispute in This Case

6. The TOUR operates three United States-based professional golf tours: the PGA TOUR, the Champions Tour, and the Web.com Tour. As part of those three tours, the TOUR

1 | sanctions, co-sponsors, and/or operates nearly one hundred separate professional golf tournaments each year ("TOUR Tournaments").

7. TOUR Tournaments principally are held at golf facilities throughout the United States and are typically operated by local host organizations ("Host Organizations"). Each TOUR Tournament has its own tournament name and often an accompanying logo. The TOUR Tournament name and/or logo typically incorporates the name and/or logo of the tournament title sponsor and/or presenting sponsor ("Title Sponsor"), i.e., the sponsor whose substantial investments in the event entitle it to such designation.

8. For example, from February 26 through March 1, 2015, the TOUR held the "Honda Classic" tournament at PGA National Resort & Spa in Palm Beach Gardens, Florida. For that particular TOUR Tournament, which was an event sanctioned by the PGA TOUR, Children's Healthcare Charity was the Host Organization. American Honda Motor Company, by reason of its financial commitment to the event, was the Title Sponsor. The name of the Tournament was the Honda Classic, and the Tournament logo was as follows:



9. I understand that, as part of their Complaint, Plaintiffs have challenged the TOUR's longstanding and commonplace practice of requiring caddies at TOUR Tournaments to wear a uniform. For TOUR Tournaments, the caddie uniform includes a caddie bib that bears the name of the caddie's player and the name and/or logo of the particular TOUR Tournament at which they are caddying (the "Uniform Policy").

10. I further understand that Plaintiffs have alleged an unlawful conspiracy between and among the TOUR and Host Organizations.

### The TOUR and Its Operations Are Based Virtually Entirely in Florida

11. The TOUR has been headquartered in Ponte Vedra Beach, Florida since the late 1970s, and has been headquartered at 100 PGA TOUR Boulevard, Ponte Vedra Beach, Florida since the early 1980s.

12. The TOUR has approximately 600 employees who reside in the State of Florida, approximately 590 of which work at the TOUR's Ponte Vedra Beach, Florida headquarters, or in nearby St. Augustine, Florida.

13. All of the TOUR's officers and senior management are located at the TOUR's Florida headquarters. This includes, among others, the Office of the Commissioner, the Executive Vice President and Chief of Operations of the PGA TOUR, Senior Vice President of Player Affairs of the PGA TOUR, Vice President of Tournament Administration and Anti-Doping, President of the Champions Tour, and President of the Web.com Tour.

14. The TOUR currently has approximately ten full-time employees in the San Francisco Bay area, all of whom have responsibilities relating to one of two TOUR Tournaments conducted in the area: the Stonebrae Classic and World Golf Championship – Cadillac Match Play tournaments. Approximately six of those employees either will relocate outside of California or end their employment with the TOUR after the conclusion of the 2015 World Golf Championship – Cadillac Match Play tournament, which will be held this year in San Francisco from April 29 through May 3, 2015, as that event will relocate to Austin, Texas in 2016. Even today, the TOUR has no permanent office in the San Francisco Bay Area; the employees are located in temporary offices and/or trailers on site at the golf courses that host the Stonebrae Classic and World Golf Championship – Cadillac Match Play tournaments. Those golf courses are not owned by the TOUR (or its affiliates). There are no other TOUR employees in the Northern District of California, nor as described more fully below, do any of the TOUR's employees in California have any involvement in any of the matters related to this lawsuit.

### Plaintiffs

15. Plaintiffs are engaged by professional golfers to serve as their caddies for TOUR Tournaments as part of the PGA TOUR, Champions Tour, and/or Web.com Tour. Plaintiffs are

not hired or compensated by the TOUR for the services they perform for golfers; rather they are hired and paid by solely the golfers for whom they work.

16. I have reviewed the TOUR's records concerning the last-known residences of Plaintiffs. Those records indicate that only four of the eighty-four named Plaintiffs reside in the State of California, and not a single Plaintiff resides in the Northern District of California.[1]

17. TOUR records also indicate that one third of Plaintiffs—twenty-eight in total—reside in the State of Florida. Of that group, twenty-two Plaintiffs, including alternate class representative Kenneth Harms, reside in the Middle District of Florida. There are also three additional Plaintiffs that reside within one hundred miles of a Middle District of Florida courthouse.

**Florida Is by Far a More Convenient Forum for the Parties and Their Witnesses**

18. All of the TOUR's anticipated party witnesses are located at TOUR headquarters in Ponte Vedra Beach, Florida—including all TOUR employees responsible for (i) establishing and implementing the Uniform Policy, (ii) relevant agreements and communications with caddies, (iii) relevant negotiations, agreements, and communications with Host Organizations, (iv) relevant negotiations, agreements, and communications with Title Sponsors, and (v) the oversight of each of the TOUR Tournaments at issue. The decisions and actions relevant to Plaintiffs' claims principally were made in Ponte Vedra Beach, Florida. The anticipated witnesses, including myself, are as follows:

   (a) **Andrew B. Levinson**. I will likely testify about agreements between caddies and the TOUR, rules and regulations with which caddies must comply including the Uniform Policy, amenities the TOUR provides to caddies, and communications between the TOUR and caddies. I will also be able to testify about the TOUR's agreement with Nature Valley, in which caddies on the PGA TOUR have the opportunity to receive money for wearing a hat bearing the Nature Valley logo. (*See* Cplt. ¶ 58.) As noted, I work at TOUR headquarters in Ponte Vedra Beach, Florida.

---

[1] The caption of the Complaint identifies eighty-one Plaintiffs. An additional three Plaintiffs (Pete Jordan, Brent Henley, and Calvin Henley) are identified in the body of the Complaint. (*See* Cplt. ¶¶ 23, 27). Robert Thompson is identified in the caption, but not identified in the body of the Complaint. (*See id.* ¶¶ 15-35.)

4
DECLARATION OF ANDREW B. LEVINSON                                        CASE NO. 3:15-cv-00489-VC

(b) **J. Andrew Pazder** (Executive Vice President and Chief of Operations for the PGA TOUR) is responsible for overseeing operations of the PGA TOUR professional golf tour. He will likely testify as to the operation of the PGA TOUR professional golf tour as it relates to caddies. In particular, Mr. Pazder possesses information regarding the rules applicable to, and obligations of, players and their caddies on the PGA TOUR professional golf tour. Mr. Pazder works at TOUR headquarters in Ponte Vedra Beach, Florida.

(c) **Greg McLaughlin** (President, Champions Tour) is responsible for overseeing the Champions Tour. He will likely testify as to the operation of the Champions Tour as it relates to caddies. In particular, Mr. McLaughlin possesses information regarding the rules applicable to, and obligations of, players and their caddies on the Champions Tour. Mr. McLaughlin works at TOUR headquarters in Ponte Vedra Beach, Florida.

(d) **William Calfee** (President, Web.com Tour) is responsible for overseeing the Web.com Tour. He will likely testify as to the operation of the Web.com Tour as it relates to caddies. In particular, Mr. Calfee possesses information regarding the rules applicable to, and obligations of, players and their caddies on the Web.com Tour. Mr. Calfee works at TOUR headquarters in Ponte Vedra Beach, Florida.

(e) **Ross Berlin** (Senior Vice President, Player Affairs) is responsible for overseeing relations with players on the PGA TOUR professional golf tour. He will be able to testify about TOUR communications with players regarding caddie matters. He works at TOUR headquarters in Ponte Vedra Beach, Florida.

(f) **Kirsten Burgess** (Senior Manager, Competitions) is responsible for overseeing the execution and collection of agreements between the TOUR and caddies. She will be able to testify about, and if necessary authenticate, the Caddie Application and Credentials form signed annually by caddies for PGA TOUR players and the Caddie Registration and Regulations forms that caddies execute before each TOUR Tournament. Ms. Burgess works at TOUR headquarters in Ponte Vedra Beach, Florida.

(g) **A representative from the TOUR's Marketing Group**, which has primary responsibility for communications with Title Sponsors. The representative will be able to testify about relevant aspects of the TOUR's agreements with Title Sponsors, in particular the on-site branding benefits (such as on caddie bibs) that are provided to Title Sponsors. That group currently has approximately fifty four employees, fifty of whom work at TOUR headquarters in Ponte Vedra Beach, Florida, and four of whom work in New York, New York.

(h) **A representative from the TOUR's Tournament Business Affairs Group**, which has primary responsibility for communications with Host Organizations. The representative will be able to testify about relevant negotiations and agreements with Host Organizations that relate to caddie bibs and caddie amenities provided at TOUR Tournaments. That group currently has approximately ten employees, all of whom work at TOUR headquarters in Ponte Vedra Beach, Florida.

(i) **A representative from the TOUR's Tournament Standards Group**, which is responsible for reviewing and approving caddie bibs. The representative will be able to testify about the history and longstanding nature of the Uniform Policy. That group currently has three employees, all of whom work at TOUR headquarters in Ponte Vedra Beach, Florida.

(j) **A representative from the TOUR's Finance Group**, which is responsible for accounting matters for the TOUR. The representative will be able to testify about the amounts received from Title Sponsors of TOUR Tournaments and the fact that a significant portion of the revenue the TOUR receives from Title Sponsors is included in TOUR Tournament prize money, a portion of which, I understand, golfers provide to their caddies. That group currently has approximately thirty employees, all of whom work at TOUR headquarters in Ponte Vedra Beach, Florida.

(k) In addition, Plaintiffs have also identified **Tyler Dennis** (TOUR Senior Vice President of Competitions) as an individual that may have relevant information. (*See* Dkt. 3-1, at ¶ 17.) Without conceding the admissibility or relevance of any information Mr. Dennis may have, the TOUR anticipates that he may be called as a witness. Mr. Dennis works at TOUR headquarters in Ponte Vedra Beach, Florida.

19. The Middle District of Florida is also the more convenient forum for Plaintiffs. As noted above, our records indicate that twenty-eight Plaintiffs reside in Florida, which is home to more Plaintiffs than any other state. Twenty-two Plaintiffs—including proposed alternate class representative Kenneth Harms—reside in the Middle District of Florida. In addition, proposed class representative William Hicks resides in North Carolina, which is far closer to Florida than the Northern District of California.

**No Potential Party Witnesses Are Located in the Northern District of California**

20. As noted above, TOUR records indicate that none of the Plaintiffs reside in the Northern District of California.

21. The TOUR does not have any anticipated party witnesses that are located in the Northern District of California.

22. None of the TOUR's approximately ten (soon to be four) San Francisco employees are responsible for establishing or implementing the Uniform Policy. They do not participate in negotiations with Host Organizations or Title Sponsors concerning the Uniform Policy, and they do not determine the design or branding on the bibs. Rather:

(a) One employee is responsible for consulting on agronomic conditions generally at TPC Harding Park, a golf course in San Francisco, at which no

6

other TOUR employees are employed.[2] The 2015 World Golf Championship – Cadillac Match Play tournament will be held at TPC Harding Park.

    (b)    Two employees are responsible for ticket sales for the World Golf Championship – Cadillac Match Play tournament.

    (c)    The remaining employees provide operational and logistical support for either the WGC Cadillac Match Play tournament or the Stonebrae Classic. Their work for the TOUR principally consists of managing and overseeing operations, the volunteer staff, and execution of deliverables for hospitality and other related tournament sales specific to these tournaments.

### All of the Evidence Relating to Plaintiffs' Claims Is Located in Florida

23.    The TOUR documents, files, and other sources of anticipated proof related to this case are all located in Ponte Vedra Beach, Florida. These include:

    (a)    Documents relating to the adoption and implementation of the Uniform Policy.

    (b)    Documents evidencing the TOUR's Uniform Policy.

    (c)    Documents consisting of or relating to agreements between the TOUR and Plaintiffs, including the agreements identified in the Complaint (*see* ¶¶ 49-53), or attached to the Declaration of James Edmondson (Dkt. 3-1).

    (d)    Documents consisting of or relating to provisions in agreements between the TOUR and Host Organizations relating to caddies and/or caddie bibs.

    (e)    Communications between the TOUR and Host Organizations concerning caddie bibs and caddie accommodations or amenities.

    (f)    Documents consisting of or relating to provisions in agreements between the TOUR and Title Sponsors, relating to caddie bibs.

    (g)    Communications between the TOUR and Title Sponsors concerning caddie bibs.

24.    I am not aware of any relevant documents, files, or other sources of proof in this case that are located in the Northern District of California.

---

[2] Tournament Players Club of California, Inc., an affiliate of the TOUR, has a contract with the City of San Francisco to operate TPC Harding Park. However, none of the individuals who assist in the operations pursuant to this contract are employed by the TOUR.

7

DECLARATION OF ANDREW B. LEVINSON        CASE NO. 3:15-cv-00489-VC

### Florida Is a More Convenient Forum for Non-Party Witnesses

25.   As noted above, caddies are not employees of the TOUR. Rather, caddies are hired and paid by professional golfers that play in TOUR Tournaments.

26.   At least some of the professional golfers that hire Plaintiffs as caddies are likely to be non-party witnesses in this litigation. They will be able to provide testimony concerning how Plaintiffs are paid, including whether Plaintiffs are in fact paid a portion of a golfer's prize money, which money is funded in part by fees paid by Title Sponsors whose names and/or logos form part of the title and/or logo of the TOUR Tournament. They may also possess relevant information regarding the caddies' consent to the Uniform Policy.

27.   I have reviewed the TOUR's records concerning the last known residences of all golfers that play in TOUR Tournaments. Those records indicate that only two of the golfers for which Plaintiffs caddie reside in California; those golfers do not, however, reside in the Northern District of California. I am not aware of any relevant golfer that resides within one hundred miles of the Northern District of California.

28.   In contrast, TOUR records indicate that nineteen golfers that play in TOUR Tournaments reside in the State of Florida, eight of whom reside in the Middle District of Florida, plus another that resides within one hundred miles of a Middle District of Florida courthouse. In addition, there are five golfers that reside in Georgia, but are within one hundred miles of a Middle District of Florida courthouse.

### TOUR Tournaments

29.   I understand that Plaintiffs have cited the existence of TOUR Tournaments in the Northern District of California as a reason why this forum is proper, and that they may cite such TOUR Tournaments as a basis for why this District is a more convenient forum. In fact, the TOUR holds more TOUR Tournaments in the Middle District of Florida than in the Northern District of California.

30.   For the current golf season, the TOUR will hold a total of eight TOUR Tournaments in the Middle District of Florida and six TOUR Tournaments in the Northern District of California.

DECLARATION OF ANDREW B. LEVINSON                                          CASE NO. 3:15-cv-00489-VC

31. During the prior golf season, the TOUR held seven TOUR Tournaments in the Middle District of Florida, and four TOUR Tournaments in the Northern District of California.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Ponte Vedra Beach, Florida on March 5, 2015.

Respectfully submitted,

ANDREW B. LEVINSON